

JUDGE FAILLA

**BECKER & POLIAKOFF LLP**
Helen Davis Chaitman, Esq.
45 Broadway, 8th Floor
New York, New York 10006
(212) 599-3322
*Attorneys for Plaintiff,*
*Kathleen Furey*

# 13 CV 6221 ₇

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KATHLEEN FUREY,

Plaintiff,

vs.

SECURITIES AND EXCHANGE
COMMISSION,

Defendant.

---

RECEIVED
SEP 0 4 2013
U.S.D.C. S.D. N.Y.
CASHIERS

COMPLAINT

Civil Action No. _____

## ED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended, and Privacy Act of 1974, 5 U.S.C. § 552a, to compel Defendant United States Securities and Exchange Commission ("SEC") to produce, provide access to, and make available certain records specified below which were requested by Plaintiff Kathleen Furey and that pertain to her.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 5 U.S.C. § 552a(g).

## PARTIES

3. Plaintiff is a citizen of the United States, a resident of the State of New York, a resident of the Southern District of New York, and a current employee in the New York Regional

{N0032553 2 }

Office (NYRO) of Defendant SEC, which has its offices within the Southern District of New York.

4.  Defendant is an agency of the United States Government and has possession and control of the records that are the subject of this action. The vast majority of said records, if not all, are maintained by and located at NYRO,

### THE PUBLIC INTEREST IN THE RELEASE OF RECORDS

5.  The facts underlying this complaint raise an issue of the highest public interest. The SEC has been *entrusted* with the power and duty of "great social and economic significance to the American people." Section 200.53 of Title 17 of the United States Code of Federal Regulations spells out that trust:

> Members of the Securities and Exchange Commission are entrusted by various enactments of the Congress with powers and duties of great social and economic significance to the American people. It is their task to regulate varied aspects of the American economy, within the limits prescribed by Congress, to insure that our private enterprise system serves the welfare of all citizens. Their success in this endeavor is a bulwark against possible abuses and injustice which, if left unchecked, might jeopardize the strength of our economic institutions.

6.  Among the acts which Congress entrusted to the SEC is the enforcement of the Investor Advisor Act of 1940 (IAA) and the Investment Company Act of 1940 (ICA).

7.  Few principles are more deeply engrained in Title 17 of the Code of Federal Regulations, which governs how the SEC must execute its powers and duties, than the mandates obligating the commissioners and staff of the SEC to vigorously enforce the securities acts against those suspected of violating them. Among the federal regulations mandating the SEC to enforce the securities acts are the following:

   A.  17 CFR 200.55:

   > In administering the law, members of this Commission should vigorously enforce compliance with the law by all persons affected

thereby…In the exercise of their judicial functions, members shall …impartially determine the rights of all persons under the law.

D. 17 CFR 200.64:

Members should recognize that their obligation to preserve the sanctity of the laws administered by them requires that they pursue and prosecute, vigorously and diligently but at the same time fairly and impartially…all matters which they or others take to the courts for judicial review.

The above regulations are applicable to both SEC commissioners and SEC staff pursuant to 17 CFR 200.735-2(b), 17 CFR 200.50, and 17 CFR 200.51).

8. This case seeks an order directing the SEC to release records which relate to the following matters of high public interest:

A. An assistant director within the New York Regional Office (NYRO), previously known as the Northeast Regional Office, had a personal policy and practice that his SEC group, approximately 20 staff attorneys plus support staff, from approximately January 1, 2002, through December 2008, did not bring administrative proceedings or civil actions under the IAA and ICA and therefore did not seriously pursue such cases. Said assistant director stated the policy and practice as follows: "We do not do IM (Investment Management) cases."

B. In October and November 2007, Plaintiff informed her supervisors, including the director of the New York Regional Office, that her assistant director had told her that he did not do IM cases. The director took no action known to Plaintiff to remedy, correct, or inquire into the personal decision of Plaintiff's assistant director to impose a moratorium on IAA or ICA cases. Instead, the director told Plaintiff she could recant her allegation or present it to the SEC's inspector general. Consequently, and reluctantly, Plaintiff informed the SEC's inspector general in November 2007 and

thereafter of the policy and practice of her assistant director not to enforce the IAA or ICA against suspected violators of those acts. Shortly after Plaintiff's disclosures to her supervisors and Defendant SEC's inspector general, Plaintiff's branch chief and assistant director began to engage in reprisals against her.

C. Plaintiff's assistant director did not terminate his moratorium on IAA and ICA cases until at least early 2009, when Congress began to investigate and the media began to report on Defendant SEC's and NYRO's failure to enforce the securities acts, and in particular the IAA and ICA, against Bernard Madoff, despite the warnings of an external whistleblower. Immediately thereafter, the reprisals against Plaintiff by Defendant SEC's senior officials broadened and intensified and would continue until the present.

9. Between September 2004 and September 2007, acting on the recommendations of Plaintiff's supervisors, Defendant SEC promoted Plaintiff each year to a higher grade level, three promotions in three years. Over the same period of time, again acting on the recommendations of Plaintiff's supervisors, Defendant SEC rewarded Plaintiff's work with annual monetary awards and raises.

10. After Plaintiff blew the whistle on her assistant director's no "IM cases" policy, as alleged above, Defendant SEC and Plaintiff's supervisors did not formally promote her again from 2007 to the present. Defendant SEC would slow down and then stop the monetary awards and raises to Plaintiff.

11. Despite the failure of Defendant SEC and Plaintiff's supervisors to formally promote her after her disclosures regarding her assistant director's moratorium on IAA and ICA, Defendant SEC and Plaintiff's immediate supervisors continued to assign her greater duties

and responsibilities until she was performing the duties and tasks of a staff person two grade levels above her formal, official grade level of SK-14. Defendant SEC continued to pay Plaintiff for performing the work of an SK-14 staff attorney, while Plaintiff's immediate supervisors, with the acquiescence of Plaintiff's entire chain of command, directed Plaintiff to perform the tasks and assume the responsibilities of an SK-16 staff attorney.

12. As a consequence of Plaintiff's whistleblowing as alleged above, Plaintiff's supervisors, acting in their capacity as Defendant SEC's senior officials, have continued to block Plaintiff's request that her pay level be raised from an SK- 14 level to an SK-16 level, commensurate with the responsibilities and duties she is and was performing. In May 2011, an independent contractor, retained by Defendant SEC conducted a classification audit by applying the SEC Universal Classification Standard to determine whether Plaintiff was performing the duties and tasks of an SK-16 level staff person. After interviewing Plaintiff and her immediate supervisor and after reviewing Plaintiff's desk audit questionnaire, which was prepared by Plaintiff with the participation of her immediate supervisor, the independent contractor determined that Plaintiff was operating at and carrying out the responsibilities of an SK-16 staff person. The independent contractor awarded Plaintiff 1,760 points out of a possible 1,760 points, conclusively establishing that Plaintiff was acting at an SK-16 level. A copy of the classification audit report is attached hereto as **Exhibit 1** and incorporated herein by reference.

13. When Plaintiff's supervisors learned that she was considering a classification audit or other procedures to confirm her status as an SK-16 level staff person, they began to tamper with her personnel records, altering her scores on her performance evaluations, after they had been presented to her and she had signed them in acknowledgment of their receipt. A copy of the

performance evaluation for the period from June 30, 2010, thorough September 30, 2010, is attached hereto as **Exhibit 2**. The alterations to Exhibit 2 are self evident on pages 1, and 3 through 6, where the higher performance grade was whited out and a lower performance grade checked.

14. After Plaintiff received the perfect score confirming that she was carrying out the responsibilities and tasks of an SK-16 level staff person, her supervisors refused to provide Plaintiff with a copy of the classification audit report and repeatedly gave Plaintiff different and conflicting reasons why they could not give it to her.

15. On January 30, 2012, Plaintiff filed a whistleblower complaint with the Office of Special Counsel (OSC) alleging that Defendant SEC had engaged in unlawful reprisals against her and seeking appropriate remedies for those reprisals. Plaintiff filed an amendment (Amendment) to her original complaint with the OSC on April 22, 2013, which describes with specificity the allegations stated above. A copy of said Amendment is attached hereto and incorporated herein by reference as **Exhibit 3**.

16. As alleged more specifically below, Plaintiff has requested Defendant SEC to release records under FOIA and the Privacy Act which relate to and support the allegations stated in the Amendment (Exhibit 3). Defendant SEC has failed and continues to fail to release the vast majority of the records specified in Plaintiff's FOIA requests, because the release of said records will support the allegations of Plaintiff's complaint to the OSC, including records which demonstrate the conscious decision of Plaintiff's assistant director not to enforce the IAA or ICA with the knowledge and consent of Plaintiff's entire chain of command, including NYRO's director.

17. In denying Plaintiff's request for access to and copies of SEC records relating to her pending complaint with the OSC, Defendant SEC has consistently relied upon Exemption 6 and Exemption 7(C). In so doing, Defendant SEC is withholding records which demonstrate the misconduct of senior SEC officials in failing to enforce the IAA and ICA, the misconduct of even higher level SEC officials in permitting subordinate supervisory staff to ignore Congressional mandates to enforce the IAA and ICA, by engaging in reprisals against Plaintiff, and by tampering with her personnel records and concealing from her the classification audit, as alleged herein. The District Court for the District of Columbia previously rejected the SEC's assertions of Exemption 6 and Exemption 7(C) to withhold similar records from a whistleblower in *Aguirre v. SEC*, 551 F. Supp. 2d 33 (D.D.C. 2008).

## THE FOIA/PRIVACY ACT REQUESTS

18. By letter dated December 8, 2011, pursuant to the applicable provisions of FOIA and the Privacy Act, Plaintiff requested access to and copies of specified documents which relate to the allegations in the Amendment. A copy of said letter is attached hereto as **Exhibit 4**.

19. During telephone conferences on December 21, December 22, and December 29, 2011, between Plaintiff and Defendant SEC's FOIA Office staff, Plaintiff discussed the possibility of narrowing the scope of her December 8, 2011, FOIA request, but no agreement was reached to do so. By her email dated January 3, 2012, Plaintiff requested the FOIA Office to proceed as follows: "Please proceed to process my 12/8/11 FOIA/Privacy Act request WITHOUT ANY modifications or amendments based on our communications since the submittal date of that request."

20. By letter dated January 5, 2012, a Defendant SEC FOIA officer informed Plaintiff that her request would be placed in the first-in, first-out (FIFO) track.

21. By letter dated January 6, 2012, Plaintiff submitted a revised and narrowed request pursuant to FOIA and the Privacy Act to Defendant SEC, hereafter "FOIA-PA Request No.1." A copy of said letter is attached hereto as **Exhibit 5**.

22. FOIA-PA Request No. 1 (Exhibit 5) specified the following definitions in relation to the requested records:

    A) "Record" or "Records" means all writings and other tangible forms of expression in your possession, custody or control, including drafts or finished versions, originals, copies or annotated copies, however created, produced or stored (manually, mechanically, electronically, or otherwise), including but not limited to books, papers, files, notes, reports, correspondence, memoranda, reports, electronic mail (in whatever manner they are stored including backup tapes), messages or logs, notes or minutes of conversations or meetings, contracts, agreements, calendars, date books, diaries, schedules, itineraries, magnetic tape, tape recordings, disks, diskettes, disk packs and other electronic media, microfilm, microfiche, fields of information and storage devices.

    B) Time Period (unless otherwise specified) means July 20, 2009 to the present.

    C) "Designated Individuals" means James Capezzuto and/or George Canellos.

    D) "2008 I.G. Report": Report issued on or about April 18, 2008 by the SEC Office of the Inspector General entitled "Investigation of Alleged Unethical Instructions to Close Cases and Failure to Pursue Investigations."

    E) "2011 I.G. Investigation": The SEC Office of the Inspector General's investigation in 2011 into the circumstances concerning the 2011 desk audit of Kathleen Furey.

23. FOIA-PA Request No. 1 (Exhibit 5) requested "access to and copies of any records concerning or relating to the matters specified" as follows:

    1. All Records generated or received by the Designated Individuals during the Time Period mentioning "Kathleen" or "Furey" or "desk audit" (in the case of

emails, include all subsequent emails in the chain), except emails which were sent to or received by fureyk@sec.gov;

2.  All Records generated or received by the Designated Individuals during the Time Period mentioning the 2008 I.G. Report or the investigation which led to such report (in the case of emails, include all subsequent emails in the chain);

3.  All emails generated or received by Tom Biolsi between December 1, 2008 and August 31, 2009 mentioning "Kathleen" or "Furey," except emails sent to or received from fureyk@sec.gov (in the case of emails, include all subsequent emails in the chain);

4.  All Records (including interview notes) generated or received by Lynn D. Williams (contractor) and/or Serco concerning the 2011 desk audit of Kathleen Furey (in the case of emails, include all subsequent emails in the chain);

5.  The unredacted 2008 I.G. Report.

24. Plaintiff is informed and believes, and thereon alleges, that Defendant SEC maintains all records described in paragraph 23 in one or more systems of records.

25. By letter dated January 6, 2012, Plaintiff's counsel informed Barry D. Walters, Defendant SEC's Director/Chief FOIA Officer, of Plaintiff's objection to a conflict of interest created by the roles of Associate General Counsel Richard M. Humes in (1) representing Defendant SEC in any administrative and civil action brought by SEC staff relating to improper personnel actions, while (2) routinely blocking access to records relating to said personnel actions and exercising control over access to said records by his de facto supervision of records relating to said personnel actions through his de facto control over the operations of

the FOIA Office and any appeals therefrom. A copy of said letter is attached hereto as **Exhibit 6**.

26. By email dated January 10, 2012, from Plaintiff's counsel to Defendant SEC's FOIA Office, Plaintiff revised her request and agreed that the search for the records described in her January 6 request, as alleged in paragraph 23, could be conducted by a search of electronic records, hereafter "Revised FOIA-PA Request No. 1." A copy of said email is attached hereto as **Exhibit 7**.

27. By letter dated January 10, 2012, Defendant SEC denied in part Plaintiff's Revised FOIA-PA Request No. 1. A copy of said letter is attached hereto as **Exhibit 8**.

28. Plaintiff is informed and believes, and thereon alleges, that on January 10, 2012, Defendant SEC's FOIA Office informed Defendant SEC's Office of Information Technology ("OIT") that the FOIA Office had estimated it would take between 15 and 20 hours to perform an electronic search of the records sought by Plaintiff's Revised FOIA-PA Request No. 1 (Exhibit 7). A redacted copy of said email is attached hereto as **Exhibit 9**. Plaintiff is further informed and believes, and thereon alleges, that the OIT sought through an email the approval of Associate General Counsel Richard Humes before it would conduct a search for the records requested by Plaintiff. A redacted copy of said email is attached hereto as Exhibit 9.

29. By letter dated September 17, 2012, Defendant SEC's FOIA Office denied in part Plaintiff's Revised FOIA-PA Request No. 1 (Exhibit 7) relying upon 5 U.S.C. § 552(b)(5), (6) and (8), 17 CFR § 200.80(b)(5), (6) and (8). A copy of said letter is attached hereto as **Exhibit 10**.

30. By letter dated September 22, 2012, Plaintiff appealed the decision of Defendant SEC's FOIA Office in relation to Revised FOIA-PA Request No. 1 (Exhibit 7). A copy of said letter

is attached hereto as **Exhibit 11**. By letter dated January 7, 2013, Associate General Counsel Richard M. Humes, acting for the Commission under delegated authority, denied Plaintiff's appeal. A copy of said letter is attached hereto as **Exhibit 12**.

31. By letter dated April 17, 2012, hereafter "Plaintiff's FOIA-PA Request No. 2," and pursuant to the applicable provisions of FOIA and the Privacy Act, Plaintiff requested access to and copies of the following documents:

    1. All Records generated or received by H. David Kotz during the time period [January 1, 2011, through December 31, 2011] mentioning, referring to, or concerning Kathleen Furey (in the case of emails, include all subsequent emails in the chain);

    2. The unredacted 2011 I.G. Report.

An unsigned copy of said letter is attached hereto as **Exhibit 13A** and a signed copy (but poorly legible) is attached hereto as **Exhibit 13B**.

32. Plaintiff is informed and believes, and thereon alleges, that Defendant SEC maintains all records described in Plaintiff's FOIA-PA Request No. 2 (Exhibits 13A and 13B), in one or more systems of records.

33. By letter dated April 27, 2012, Defendant SEC acknowledged receipt of the Plaintiff's FOIA-PA Request No. 2 and assigned it number 12-00001-OIGP.

34. By letter dated September 12, 2012, Defendant SEC partially denied Plaintiff's FOIA-PA Request No. 2. Defendant SEC withheld information under 5 U.S.C. § 552(b)(6), (7)(C) and (8), 17 CFR § 200.80(b)(6), (7)(iii) and (8). A copy of said letter is attached hereto as **Exhibit 14**.

35. By letter dated September 22, 2012, Plaintiff appealed the decision of Defendant SEC's FOIA Office regarding Plaintiff's FOIA-PA Request No. 2. A copy of said letter is attached hereto as Exhibit 11.

36. By letter dated January 7, 2013, Defendant SEC denied Plaintiff's appeal regarding Plaintiff's FOIA-PA Request No. 2. A copy of said letter is attached hereto as **Exhibit 15**.

37. By letter dated March 2, 2013, hereafter "Plaintiff's FOIA-PA Request No. 3," pursuant to the applicable provisions of FOIA and the Privacy Act, Plaintiff requested access to and copies of the following documents:

    1) All emails generated or received by Rebecca Pikofsky between May 1, 2011 and April 30, 2012, mentioning "Kathleen" or "Kathy" or "Furey," except emails sent to or received from fureyk@sec.gov (in the case of email, include all prior and subsequent emails in the chain);

    2) All emails generated or received by Jeffrey Risinger between May 1, 2011 and April 30, 2012, mentioning "Kathleen" or "Kathy" or "Furey" or "desk audit" (in the case of email, include all prior and subsequent emails in the chain); and

    3) All emails generated or received by Joseph Dever, George Stepaniuk, David Rosenfeld and Mark Schonfeld between January 1, 2008, and June 1, 2008, mentioning "Kathleen" or "Furey," except emails sent to or received from fureyk@sec.gov (in the case of email, include all prior and subsequent emails in the chain);

A copy of said letter is attached hereto as **Exhibit 16**.

38. Plaintiff is informed and believes, and thereon alleges, that Defendant SEC maintains all records described in Plaintiff's FOIA-PA Request No. 3 (Exhibit 16), in one or more systems of records.

39. By letter dated March 04, 2013, Defendant SEC acknowledged receipt of Plaintiff's FOIA-PA Request No. 3 regarding FOIA. A copy of said letter is attached hereto as **Exhibit 17**.

40. By letter dated March 15, 2013, Defendant SEC acknowledged receipt of Plaintiff's FOIA-PA Request No. 3 regarding the Privacy Act. A copy of said letter is attached hereto as **Exhibit 18**.

41. By letter dated April 12, 2013, Defendant SEC denied any access under the Privacy Act to any records in Plaintiff's FOIA-PA Request No. 3. Defendant SEC further refused to process any records under FOIA in Plaintiff's FOIA-PA Request No. 3 for at least 24 months. A copy of said letter is attached hereto as **Exhibit 19**.

42. By letter dated May 10, 2013, Plaintiff appealed the decision of Defendant SEC's FOIA Office regarding Plaintiff's FOIA-PA Request No. 3 (Exhibit 19). A copy of said letter is attached hereto as **Exhibit 20**.

43. By letter dated May 14, 2013, Defendant SEC acknowledged receipt of Plaintiff's appeal of Defendant SEC's initial decision regarding Plaintiff's FOIA-PA Request No. 3. A copy of said letter is attached hereto as **Exhibit 21**.

44. The time period within which Defendant SEC must determine Plaintiff's appeal of May10, 2013, has expired. Defendant SEC has sent no correspondence to Plaintiff since its letter of May 14, 2013 (Exhibit 21).

45. By letter dated April 27, 2013, hereafter "Plaintiff's FOIA-PA Request No. 4," pursuant to the applicable provisions of FOIA and the Privacy Act, Plaintiff requested access to and copies of the following documents:

1) All records provided by the Securities and Exchange Commission (SEC) to the OSC in response to the whistleblower complaint of Kathleen Furey (Furey) filed with the OSC on January 30, 2012.

2) The Employee Performance File (EPF), the Official Performance File (OPF) and all files maintained by the SEC or any of its offices or divisions relating to Furey.

3) All records maintained by the Office of Human Resources relating to the possible promotion of Furey to an SK-16 level, including any drafts of records promoting Furey to an SK-16 level.

4) All records individually maintained or generated by Joseph Dever (Dever), George Stepaniuk (Stepaniuk), Thomas Biolsi (Biolsi), James Capezzuto (Capezzuto), George Canellos (Canellos), David Rosenfeld (Rosenfeld), or Mark Schonfeld (Schonfeld) relating to the performance of Furey which were not filed in Furey's EPF or OPF. (Such files or records from such files are believed to be in the custody of Canellos or Humes and the OGC attorneys representing the SEC in relation to Furey's pending whistleblower complaint).

5) All emails including attachments generated or received by Jeff Heslop since May 17, 2010, to the present, including any emails to or from Mary Schapiro, which mention Furey (include all subsequent emails in the chain). Furey

agrees that electronic files may be searched using the terms "Kathleen" or "Furey."

6)  All records generated or received by Capezzuto, Canellos, Norman Champ, Carlo diFlorio or Jeff Heslop in relation to a meeting among Canellos, Champ, diFlorio and possibly other SEC staff in November or December 2011 during which those present discussed Furey's possible promotion to the level SK-16 or the desk audit of Furey completed in May 2011.

7)  Any agreement between Capezzuto and the SEC executed by Capezzuto between March 1, 2012, and April 30,2012, which contains any term requiring Capezzuto to cooperate with the   SEC in any future administrative or civil action, or any other term not customarily included in documents relating to the severance of an SEC staff member.

8)  All records of interviews or testimony transcripts of Biolsi, Stepaniuk, Dever, Schonfeld, Rosenfeld and Karen Lee taken during the investigation of OIG Case No. 478.

A copy of said letter is attached hereto as **Exhibit 22**.

46. Plaintiff is informed and believes, and thereon alleges, that Defendant SEC maintains all records described in Plaintiff's FOIA-PA Request No. 4 in one or more systems of records.

47. By letter dated April 29, 2013, Defendant SEC acknowledged receipt of Plaintiff's FOIA-PA Request No. 4 and assigned it number 13-06637-FOIA. A copy of said letter is attached hereto as **Exhibit 23**.

48. The time period within which Defendant SEC must determine whether it will comply with said request and notify Plaintiff of its decision has expired. Defendant SEC has sent no correspondence to Plaintiff since its letter of April 23, 2013 (Exhibit 23).

49. By letter dated May 10, 2013, hereafter "Plaintiff's FOIA-PA Request No. 5," and pursuant to the applicable provisions of FOIA and the Privacy Act, Plaintiff requested access to and copies of the following documents:

   1. All RECORDS referencing or confirming the opening and/or closing of any matter under inquiry (MUI) by any staff attorney in Assistant Director George Stepaniuk's group from January 1, 2000, through December 31, 2012, relating in whole or in part to any possible violations of the Investment Advisors Act of 1940 (IAA) or the Investment Company Act of 1940 (ICA).

   2. All RECORDS referencing or confirming the opening and/or closing of any formal INVESTIGATION by any attorney within Assistant Director George Stepaniuk's group from January 1, 2000, through December 31, 2012, involving any possible violations of the IAA or the ICA.

   3. All RECORDS referencing or confirming the filing of any civil action or administrative proceeding by any staff attorney within Assistant Director George Stepaniuk's group from January 1, 2000, through December 31, 2012, involving any possible violations of the IAA or the ICA opened.

   A copy of said letter is attached hereto as **Exhibit 24**.

50. By letter dated May 13, 2013, Defendant SEC acknowledged receipt of Plaintiff's FOIA-PA Request No. 5 and assigned it number 13-07112-FOIA. A copy of said letter is attached hereto as **Exhibit 25**.

51. The time period within which Defendant SEC must determine whether it will comply with said request and notify Plaintiff of its decision has expired. Defendant SEC has sent no correspondence to Plaintiff since its letter of May 13, 2013 (Exhibit 25).

## PLAINTIFF'S CLAIM FOR RELIEF: VIOLATIONS OF FOIA

52. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

53. Plaintiff is entitled by law to access the records requested under the FOIA.

54. Defendant SEC is in violation of the FOIA, 5 U.S.C. § 552, by failing to fully and lawfully with paragraphs 1 through 5 of Plaintiff's January 6, 2012, request for the records (Exhibit 5), as modified by the January 10, 2012, email of Plaintiff's counsel (Exhibit 7) as specified in paragraph 26 above.

55. Defendant SEC is in violation of the FOIA, 5 U.S.C. § 552, by failing to fully and lawfully fulfill paragraphs 1 and 2 of Plaintiff's April 12, 2012, request for records (Exhibits 13A and 13B) as specified in paragraph 31 above.

56. Defendant SEC is in violation of the FOIA, 5 U.S.C. § 552, by failing to fully and lawfully fulfill paragraphs 1 through 3 of Plaintiff's March 2, 2013, request for records (Exhibit 16) as specified in paragraph 37 above.

57. Defendant SEC is in violation of the FOIA, 5 U.S.C. § 552, by failing to fully and lawfully fulfill paragraphs 1 through 8 of Plaintiff's April 27, 2013, request for records (Exhibit 22) as specified in paragraph 45 above.

58. Defendant SEC is in violation of the FOIA, 5 U.S.C. § 552, by failing to fully and lawfully fulfill paragraphs 1 through 3 of Plaintiff's May 10, 2013, request for records (Exhibit 24) as specified in paragraph 49 above.

## PLAINTIFF'S CLAIM FOR RELIEF: VIOLATIONS OF THE PRIVACY ACT

59. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

60. Plaintiff is entitled by law to access the records requested under the Privacy Act, 5 U.S.C. § 552a.

61. Defendant SEC is in violation of the Privacy Act, 5 U.S.C. § 552a, by failing to fully and lawfully fulfill paragraphs 1 through 5 of Plaintiff's January 6, 2012, request for the records (Exhibit 5), as modified by the January 10, 2012, email of Plaintiff's counsel (Exhibit 7) as specified in paragraph 23 above.

62. Defendant SEC is in violation of the Privacy Act, 5 U.S.C. § 552a, by failing to fully and lawfully fulfill paragraphs 1 and 2 of Plaintiff's April 12, 2012, request for records (Exhibit 13A and 13B) as specified in paragraph 31 above.

63. Defendant SEC is in violation of the Privacy Act, 5 U.S.C. § 552a, by failing to fully and lawfully fulfill paragraphs 1 through 3 of Plaintiff's March 2, 2013, request for records (Exhibit 22) as specified in paragraph 37 above.

64. Defendant SEC is in violation of the FOIA, 5 U.S.C. § 552, by failing to fully and lawfully fulfill paragraphs 1 through 8 of Plaintiff's April 27, 2013, request for records (Exhibit 22) as specified in paragraph 45 above.

65. Defendant SEC is in violation of the Privacy Act, 5 U.S.C. § 552a, by failing to fully and lawfully fulfill paragraphs 1 through 3 of Plaintiff's May 10, 2013, request for records (Exhibit 24) as specified in paragraph 49 above.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that the Court:

A.  Declare that Defendant SEC has violated the FOIA and the Privacy Act by failing to satisfy Plaintiff's January 6, 2012, and April 12, 2012, requests for records as specified in paragraphs 23 and 31 above;

B.  Order Defendant SEC to immediately search for and release all records responsive to paragraphs 1 through 5 of the January 6, 2012, request for records as specified in paragraph 23 above; paragraphs 1 and 2 of the April 12, 2012, request for records as specified in paragraph 31 above; paragraphs 1 through 3 of the March 2, 2013, request for records as specified in paragraph 37 above; paragraphs 1 through 8 of the April 27, 2013, request for records as specified in paragraph 45 above; and paragraphs 1 through 3 of Plaintiff's May 10, 2013, request as specified in paragraph 49 above;

C.  Award Plaintiff her costs and reasonable attorney fees and litigation costs in this action; and

D.  Grant such other and further relief as the Court may deem just and proper.

Dated:        New York, New York            BECKER & POLIAKOFF LLP
              September 4, 2013

                                           By: _____
                                               Helen Davis Chaitman
                                               45 Broadway, 8th Floor
                                               New York, New York 10006
                                               (212) 599-3322
                                               *Attorneys for Plaintiff,*
                                               *Kathleen Furey*

                                           Gary J. Aguirre
                                           California Bar No. 38927
                                           501 W Broadway, Ste. 800
                                           San Diego, CA 92101
                                           Subject to *pro hac vice* admission

{N0032553 2 }                    19